IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.   No. 15-cr-4409 KG

SULEMA CARBAJAL DEL REAL,

    Defendant.

### MAGISTRATE JUDGE'S SECOND PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on a Memorandum Order and Opinion by the Honorable Kenneth J. Gonzales, United States District Judge, filed March 25, 2016.  [Doc. 45].  In the Order, Judge Gonzales sustained the Government's objections to my Proposed Findings and Recommended Disposition [Doc. 41] (in which I recommended granting Defendant's Motion to Suppress [Doc. 22]) and resubmitted this matter to me for further consideration.  Having reviewed the Government's objections, Defendant's response to those objections, and Judge Gonzales' Memorandum Order and Opinion, I find that considering the totality of the circumstances, the stop of Defendant was not supported by reasonable suspicion.  I therefore recommend GRANTING Defendant's Motion to Suppress.

### Procedural Background

After Defendant was stopped by border patrol agents, her vehicle was searched and illegal drugs were seized. [Doc. 22] at 1.  Defendant was arrested and charged with possession with intent to distribute a controlled substance.  [Doc. 16].  She filed a Motion to Suppress Physical Evidence and Statements ("Motion") [Doc. 22], on January 7, 2016, in which she

challenges both the initial stop and her continued detention as unconstitutional.  She moves to suppress all evidence, physical and testimonial, recovered a result of the stop and detention.  *Id*. at 1.  The Government responded on January 21, 2016.  [Doc. 30].  Defendant replied on January 26, 2016.  [Doc. 31].  Judge Gonzales referred the Motion to me to make findings of fact and to recommend an ultimate disposition.  [Doc. 25].

I held an evidentiary hearing on February 22, 2016.  United States Border Patrol agents Orlando Morin and Philip Gaylord, along with Border Patrol Law Enforcement Communications Assistant Argelia Reta, testified for the Government.  Investigator Horlando Lopez testified for Defendant.  I issued my Proposed Findings and Recommended Disposition ("PF&RD") on March 2, 2016.  [Doc. 41].  The Government objected to the legal conclusions of the PF&RD, but not the factual findings, on March 16, 2016.  [Doc. 43].  Defendant responded to those objections.  [Doc. 44].  Judge Gonzales issued a Memorandum Opinion and Order sustaining the Government's objections and directing me to revisit my PF&RD.  [Doc. 45].  Specifically, he asked me to analyze the totality of the circumstances through the eyes of a reasonable border patrol agent with Agent Morin's training and experience, according due deference to Agent Morin's ability to distinguish between innocent and suspicious conduct, and make clear my finding on his credibility.  *Id*. at 3.

**Standard for Stops by United States Border Patrol Agents**

Consistent with the Fourth Amendment's prohibition on unreasonable searches and seizures, Border Patrol agents on roving patrol may stop vehicles "only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicle's occupants are involved in criminal activity.  *United States v.*

*Cantu*, 97 F.3d 1118, 1120 (10th Cir. 1996).  Reasonable suspicion "does not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *United States v. Arvizu*, 534 U.S. 266, 274 (2002).  "By imposing the reasonable suspicion standard, the Supreme Court sought to avoid subjecting residents of the [border area] to potentially unlimited interference with use of the highways, solely at the discretion of Border Patrol officers."  *United States v. Rodriguez-Rivas*, 151 F.3d 377, 380 (5th Cir. 1998).

When determining if a Border Patrol agent had reasonable suspicion to stop a vehicle in the border area, the Court considers "the totality of the circumstances" under which the stop occurred.  *United States v. Sokolow*, 490 U.S. 1, 8 (1989).  In making its determination, the Court takes into account (1) the characteristics of the area where the agent encountered the vehicle; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the road; (4) the agent's previous experience with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including erratic driving or any obvious attempts to evade the agent; (7) aspects of the vehicle, such as a station wagon with concealed compartments; (8) the appearance that the vehicle is heavily loaded; and other relevant factors.  *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975).  "When evaluating an [agent's] decision to stop a vehicle, a court may not engage in a 'sort of divide-and-conquer analysis' by evaluating and rejecting each factor in isolation."  *United States v. Cheromiah,* 455 F.3d 1216, 1221 (10th Cir. 2006).  Rather, the "whole picture" should be taken into account.  *United States v. Cortez*, 449 U.S. 411, 417 (1981).

In deciding whether the government has met its burden of showing reasonable suspicion, we "judge the officer's conduct in light of common sense and ordinary human experience," *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997), and we accord deference to an officer's ability to distinguish between innocent and suspicious actions. *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997); *see also United States v. Lopez-Martinez*, 25 F.3d 1481, 1484 (10th Cir. 1994) (observing that deference is owed to police officer's ability to assess suspiciousness of seemingly innocent conduct). Thus, "[t]he evaluation is made from the perspective of the reasonable *officer*, not the reasonable *person*." *United States v. Guerrero*, 472 F.3d 784, 787 (10th Cir. 2007) (internal quotation marks omitted) (emphasis in original).

The deference owed to the officer's judgment, however, is not unlimited. Even though reasonable suspicion may be founded upon factors consistent with innocent travel, *see Sokolow*, 490 U.S. at 10, "[s]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous." *United States v. Lee*, 73 F.3d 1034, 1039 (10th Cir. 1996), overruled on other grounds by *United States v. Holt*, 264 F.3d 1215, 1226 n.6 (10th Cir. 2001) (en banc). Moreover, the officer must point to specific, articulable facts. *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994). Inchoate suspicions and unparticularized hunches do not provide reasonable suspicion. *Id*.

Unlike ordinary police officers, Border Patrol agents have limited jurisdiction. *Ortiz v. United States Border Patrol*, 39 F. Supp. 2d 1321, 1326 (D.N.M. 1999), *aff'd*, 210 F.3d 390 (10th Cir. 2000) ("Border Patrol agents are not general law enforcement officers. Instead . . . their authority and duties are circumscribed by statute and limited in scope. Their primary duties are to prevent illegal aliens from entering the country."). Border Patrol agents do not have

authority to stop a vehicle for a traffic violation alone. *See United States v. Hernandez-Lopez*, 761 F. Supp. 2d 1172, 1199 (D.N.M. 2010) ("The Border Patrol has no jurisdiction to enforce the New Mexico traffic code."); *United States v. Rodriguez-Rivas*, 151 F.3d 377, 381 (5th Cir. 1998) ("the absence of Texas license plates alone does not authorize a Border Patrol agent to stop a vehicle"); *United States v. Gonzales-Calderon*, No. 05–CR–1369 BB, 2005 WL 6147579, at *3 n.1 (D.N.M. Sept. 16, 2005) (unpublished) ("The [Border Patrol agent]'s testimony that the van's speed was erratic and that the van made two lane changes is not relevant [to determining whether reasonable suspicion existed] as the Agent admitted he had no authority to stop the van for traffic violations.").

**Factual Findings**

Orlando Morin had been a border patrol agent for nine years in August 2015. I give due deference to his training and experience as an agent. And with one exception, which I will discuss below, I found him to be a credible witness. Prior to beginning his career, Agent Morin attended the 20-week border patrol training academy. Hrg. Tr. at 10:12–21. As an agent, his duties involved detecting and apprehending illegal aliens and narcotics. *Id*. at 10:22–11:1. At approximately 4:00 a.m.[1] on August 31, 2015, he was observing a section of New Mexico Highway 80, about 50 miles from the U.S.-Mexico border, and one mile from the Arizona border. [Doc. 30] at 1; Hrg. Tr. at 13:2–8.

---

[1] I find Agent Morin's testimony that smugglers tried to take advantage of a purported 4:00 a.m. "shift change" at the Lordsburg Border Patrol station in order to avoid detection to be unpersuasive. [Doc. 30] at 2; Hrg. Tr. at 60:9–62:12; 105:13–108:14.  A shift change occurs when "agents begin heading back to the [station, leaving] the area unpatrolled." *Arvizu*, 534 U.S. at 269. Testimony at the hearing revealed that the shifts at the Lordsburg station are as follows: 12:00 p.m.–8:00 pm., 6:00 p.m.–2:00 a.m., 12:00 a.m.–8:00 a.m., and 6:00 a.m.–2:00 p.m. Hrg. Tr. at 105:13–106:2. Agents leave the field to return to the station between one to one-and-a-half hours before their shift ends. *Id*. at 89:6–11. Agents also sometimes work overtime, adding up to two hours to the end of their assigned shift. *Id*. at 107:19–108:12.  Based on this testimony, it appears that 4:00 a.m. is one of the few times during the day when agents are neither coming on nor going off duty. Hrg. Tr. at 105:13–106:2. If criminals are aware of the shift hours, they would know that.

Agent Morin patrolled this area about once or twice a week and was familiar with the vehicles belonging to local residents. *Id*. at 16:11–16. He was aware that Highway 80 was often used by smugglers, and that traffic at that early hour consisted mainly of semi-trailer trucks. *Id*. at 13:10–15, 14:9–13. In his experience, smugglers from Mesa and Phoenix, Arizona frequent this portion of Highway 80 in order to avoid border patrol checkpoints on other routes. *Id*. at 19:1–10. Agent Morin was trained to observe vehicle occupants, and had observed hundreds or thousands during his career. *Id*. at 79:12–18. I accord due deference to his ability to distinguish between innocent and suspicious conduct.

He saw Defendant pass his location in a 2002 Honda Civic, travelling at the speed limit.[2] *Id*. at 14:16; 16:22–25; 45:8–18. Because of the vehicle's speed, and because he was only able to see the area of the highway illuminated by his headlights as it was completely dark outside, Agent Morin was only able to observe the vehicle for a fraction of a second. *Id*. at 44:17–46:2. He had apprehended one or two older-model sedans carrying illegal aliens in the previous weeks. *Id*. at 69:7–9. He did not recognize the car as belonging to a local resident, and decided to follow her while calling in a records check. *Id*. at 17:1–11. The records check revealed that the car was registered to a woman in Mesa, Arizona, was not stolen, and had not recently crossed the U.S.-Mexico border. *Id*. at 18:2–10. The agent followed her for about fourteen miles, during which time she continued to travel at the speed limit.[3] *Id*. at 66:21–67:1; 64:25–65:3. Agent Morin testified that during this period he observed Defendant check her rear view mirror several

---

[2] Agent Morin's testimony at the hearing that he was unable to see Defendant's demeanor when she first passed is inconsistent with the Government's Response, which alleged that Agent Morin could see Defendant and that she appeared rigid and did not turn to look at him. *Compare* [Doc. 30] at 3, *with* Hrg. Tr. at 17:1–5.

[3] Agent Morin's testimony at the hearing that he could see Defendant look in her rearview mirror at "one of the times when the road bends" is inconsistent with the Government's Response, which alleged that Defendant was "constantly checking her rear view mirror." *Compare* Hrg. Tr. at 22:8–11, 65:24–66:7, *with* [Doc. 30] at 4.

6

times, which he considered to be suspicious behavior. *Id*. at 22:8–11; 65:24–66:7. I find this portion of his testimony not credible, especially after viewing the video (Defendant's Exhibit M) tendered by Defendant. The area in question is pitch black at night. There are no street lights or other sources of illumination that would have allowed the agent to observe Defendant's behavior while following behind her. I reject this portion of the agent's testimony as I found it to be not credible.

Eventually, Defendant swerved to the left a few times, but did not leave her lane. *Id*. at 22:7–11; 69:17–20. Agent Morin decided to pull her over for an "immigration inspection." [Doc. 30] at 3–4. After initiating the stop, Agent Morin spoke to Defendant and eventually received her permission to search her trunk, and then later to search her entire vehicle. *Id*. at 5–6; Hrg. Tr. at 25:18–26:1; 29:2–13. He found two bundles wrapped in brown packing tape. [Doc. 30] at 6. Testing revealed that the bundles contained approximately 80 kilograms of marijuana. *Id*. at 7. Defendant was arrested and later spoke to agents about the details of her transportation of the drugs. *Id*.

### Agent Morin did not have reasonable suspicion to stop Defendant's vehicle.

As Judge Gonzales emphasized in his Memorandum Order and Opinion, when deciding if a Border Patrol agent on roving patrol had reasonable suspicion to stop a vehicle, it is necessary to evaluate the totality of the circumstances viewed from the perspective of a reasonable border patrol agent, giving deference to his expertise in identifying suspicious conduct. It is not enough to merely analyze each *Brignoni-Ponce* factor "in isolation" without considering the entire picture. [Doc. 45] at 3.

A reasonable border patrol agent with Agent Morin's training and experience would not have found that the circumstances here amounted to reasonable suspicion. *See United States v. Hernandez-Lopez*, 761 F. Supp. 2d 1172 (D.N.M. 2010) (agent did not have reasonable suspicion to stop Dodge sedan travelling on I-25 100 miles from international border where agent had previously made 20 arrests when sedan was not heavily loaded, was not stolen, had not recently crossed international border, driver began to swerve after agent followed, and reduced speed as if to allow agent to pass); *United States v. Miranda-Enriquez*, 941 F.2d 1081 (10th Cir. 1991) (agent did not have reasonable suspicion to stop Nissan sedan with Arizona plates travelling at night on known smuggling route about 100 miles from international border where agent had previously made hundreds of arrests, even though car was covered in dust, indicating it had driven on back road smuggling route, driver appeared stiff, and agent saw undefined shapes in backseat); *United States v. Abdon-Limas*, 780 F. Supp. 773 (D.N.M. 1991) (agent did not have reasonable suspicion to stop older-model Chrysler with Colorado plates travelling on known smuggling route mostly used by farm workers when vehicle slowed down when agent began following them and occupants, who appeared Hispanic, did not turn to look at him when he pulled next to them); *United States v. Castro*, 929 F. Supp. 2d 1140 (D.N.M. 2013) (agent did not have reasonable suspicion to stop truck that made a U-turn one mile before it would have had to enter a border patrol checkpoint on a known smuggling route about 50 miles from the international border).

The Supreme Court has recognized that "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that

suspicion." *Cortez*, 449 U.S. at 419. But what are permissible deductions? In *Cortez*, the Court explained that, "[A]n assessment of the whole picture [as required by *Brignoni-Ponce*] must be based on all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." *Id*. at 418. In this case, Agent Morin testified that Defendant's vehicle (a sedan) was suspicious because in the preceding two weeks he had twice apprehended individuals smuggling aliens in sedans. [Doc. 30] at 2; Hrg. Tr. at 60:9–62:12. And while the Court must give deference to the agent's experience, deference must have limits. If Agent A arrests a smuggler driving a sedan, and Agent B arrests another smuggler driving a truck, and Agent C arrests a smuggler driving a station wagon, and so on until every type of motor vehicle is implicated, would it be a reasonable to deduce that every type of vehicle is suspicious? As the Court explained in *Cortez*, "The process [of drawing inferences and deductions] does not deal with certainties, but probabilities." *Id*. In other words, law enforcement officers must be aware of certain patterns of operations of certain kinds of lawbreakers, in order to deduce that a person acting in accordance with those patterns might reasonably be thought to be engaged in criminal behavior. The Government offered no evidence tending to prove that any type of lawbreaker tends to favor late-model sedans, for alien smuggling or any other illegal behavior.

With what does that leave us? It leaves us with a single female, not known to be a local resident, driving at night, obeying all traffic laws, on a known drug-smuggling route. That, in my opinion, constitutes the "totality of the circumstances," and I find these circumstances insufficient to form a legitimate basis for suspicion that this particular driver was engaged in

criminal activity.  If the circumstances leading up to Defendant's stop were enough to establish reasonable suspicion, "a very large category of presumably innocent travelers . . . would be subject to virtually random seizures."  *Reid*, 448 U.S. at 441.  After all, "[e]ven though reasonable suspicion may be founded upon factors consistent with innocent travel, some facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous."  *Wood*, 106 F.3d at 946. Under the criteria asserted by the Government, a border patrol agent on roving patrol would function much the same as an agent at a checkpoint, authorized to stop nearly every passing vehicle, or as a general law enforcement officer, able to stop a vehicle for a minor violation of the New Mexico traffic code.

While I accord due deference to Agent Morin's expertise in distinguishing between innocent and suspicious behavior, the facts of this case—considered in combination with each other—do not provide the reasonable suspicion necessary to perform an immigration inspection.  The Government has not presented sufficient facts to show that Agent Morin had reasonable suspicion to stop this *particular* lone driver in this *particular* vehicle for a suspected immigration violation.  "Reasonable suspicion must be founded upon a particularized and objective basis for suspecting the *particular person* stopped of criminal activity.  For this reason we must not accept what has come to appear to be a prefabricated or recycled profile of suspicious behavior very likely to sweep many ordinary citizens into a generality of suspicious appearance merely on hunch."  *United States v. Rodriguez*, 976 F.2d 592, 595–96 (9th Cir. 1992).  Based on the totality of the circumstances, I find that Agent Morin did not have reasonable suspicion to stop Defendant for an immigration inspection.  The stop, therefore, violated the Fourth Amendment.  All evidence recovered as a result of the stop should be suppressed.

## Conclusion and Recommended Disposition

For the reasons set forth herein, I respectfully recommend that Defendant's Motion to Suppress [Doc. 22] be **GRANTED**, and all evidence obtained from the stop be suppressed.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**