IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal No. 15-4409 KG |
| vs. | ) | |
| | ) | |
| **SULEMA CARBAJAL DEL REAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES' OBJECTIONS TO THE MAGISTRATE JUDGE'S SECOND
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

The United States hereby respectfully objects to the Magistrate Judge's Second Proposed

Findings and Recommended Disposition, Doc. 49, filed on April 7, 2016.  For the reasons set

forth herein, the United States requests that this Court not adopt the Magistrate Judge's legal

conclusions.

## I.    Procedural History

On August 30, 2015, the Defendant was arrested and charged with a violation of 21

U.S.C. § 841, possession with intent to distribute marijuana.  On August 31, 2015, she was

presented for initial appearance, and on September 2, 2015, she waived her preliminary hearing.

The Defendant was indicted by the Grand Jury on December 9, 2015, and was arraigned

on December 18, 2015.

On January 7, 2016, the Defendant filed a Motion to Suppress Physical Evidence and

Statements.  Doc. 22.  On January 12, 2016, the Honorable Kenneth J. Gonzales, United States

District Judge, referred the Motion to Suppress Physical Evidence and Statements to the

Honorable Stephan M. Vidmar, United States Magistrate Judge, to make findings of fact and to

recommend an ultimate disposition. Doc. 25. On January 21, 2016, the United States filed its

Response in the Defendant's Motion to Suppress Physical Evidence and Statements. Doc. 30.

On January 26, 2016, the Defendant filed a Reply to the United States' Response. Doc. 31. The

Magistrate Judge held an evidentiary hearing on the Defendant's Motion to Suppress Physical

Evidence and Statements on February 22, 2016.

After the evidentiary hearing, the Magistrate Judge issued a written Proposed Findings

and Recommended Disposition ("PF&RD"), Doc. 41, on March 2, 2016. The Magistrate Judge

recommended that the Defendant's suppression motion be granted, and that the evidence

obtained from the stop be suppressed. Doc. 41 at 2. On March 16, 2016, the United States filed

its Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition.

Doc. 43. On that same day, the Defendant filed a response to the United States' Objections.

Doc. 44. On March 25, 2016, Judge Gonzales issued a Memorandum Opinion and Order

sustaining the United States' objections and directing the Magistrate Judge to revisit his PF&RD

in accordance with the Memorandum Opinion and Order. Doc. 45. On April 7, 2016, the

Magistrate Judge issued a second written PF&RD recommending that the Defendant's

suppression motion be granted. Doc. 49.

## II.    Report and Recommendation

In his Memorandum Opinion and Order, Judge Gonzales asked the Magistrate Judge to

analyze the *Brignoni-Ponce* factors, under the totality of the circumstances, and "through the

eyes of a reasonable and cautious police officer on the scene, guided by his experience and

training." Doc. 45 at 3. Judge Gonzales also directed the Magistrate Judge to make clear

findings of credibility and "give due deference to Agent Morin's ability to distinguish between

innocent and suspicious actions," unless the Magistrate Judge explicitly found that Agent Morin's testimony was not credible. *Id.*

Based on the evidence presented at the suppression hearing, the Magistrate Judge found that Agent Morin was a credible witness with one exception. The exception being that the Magistrate Judge did not find credible Agent Morin's testimony that while following the Defendant for fourteen miles, Agent Morin observed the Defendant checking her rear view mirror several times.[1]  Doc. 49 at 6-7.

The Magistrate Judge further held that "[a] reasonable border patrol agent with Agent Morin's training and experience would not have found that the circumstances here amounted to reasonable suspicion." Doc. 49 at 8.  The Magistrate Judge determined that Agent Morin's belief that the Defendant's vehicle —an older model sedan— was suspicious because in the preceding two weeks he had twice apprehended individuals smuggling aliens in sedans, was insufficient "to prove that any type of lawbreaker tends to favor late-model sedan, for alien smuggling or any other illegal behavior." *Id.* at 9.  Thus, according to the Magistrate Judge, the totality of the circumstances in this case — "a single female, not known to be a local resident, driving at night, obeying all traffic law, on a known drug-smuggling route" — is insufficient to support reasonable suspicion.  Doc. 49 at 9-10.

---

[1] The Magistrate Judge also found "Agent Morin's testimony that smugglers tried to take advantage of a purported 4:00 a.m. 'shift change' at the Lordsburg Border Patrol station in order to avoid detection to be unpersuasive."  Doc. 49 at 5 n.1.  This is because based on Agent Morin's explanation of the Lordsburg Border Patrol station shift-change, "it appears that 4:00 a.m. is one of the few times during the day when agents are neither coming on nor going off duty."  *Id.*  The United States is not relying and does not ask the Court to rely on the assertion that the Defendant was traveling during the Lordsburg Border Patrol station's shift change as a factor to be considered in justifying the stop of the Defendant.

### III.    Objections

The District Judge reviews the Magistrate Judge's PF&RD de novo.  FED. R. CRIM. P. 59(b)(3).  The United States objects to the Magistrate Judge's ultimate conclusion that Agent Morin lacked reasonable suspicion to stop the Defendant's vehicle.

Consistent with the Fourth Amendment's prohibition against unreasonable searches and seizures, Border Patrol agents on roving patrol are permitted to "stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the occupants are involved in criminal activity.  *United States v. Cantu,* 87 F.3d 1118, 1121 (10th Cir. 1996) (quoting *United States v. Brignoni-Ponce,* 422 U.S. 873, 884 (1975)).  Reasonable suspicion does "not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu,* 534 U.S. 266, 274 (2002).  Rather, "reasonable suspicion represents a 'minimum level of objective justification.'" *United States v. Mendez,* 118 F.3d 1426, 1431 (10th Cir. 1997) (quoting *United States v. Sokolow,* 490 U.S. 1, 7 (1989)).  In determining whether there is reasonable suspicion to stop a car in the border area, officers may consider any number of factors, including:

> (1) [the] characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*United States v. Monsisvais,* 907 F.2d 987, 989 (10th Cir. 1990) (citing *Brignoni-Ponce,* 422 U.S. at 884-85).

When evaluating an officer's decision to stop a vehicle, a court may not engage in a "divide-and-conquer analysis" by evaluating and rejecting each factor in isolation. *Arvizu,* 534 U.S. at 274; *United States v. Gandara-Salinas,* 327 F.3d 1127, 1130 (10th Cir. 2003). This is because factors that, by themselves, may be "consistent with innocent travel" may collectively amount to reasonable suspicion. *Arvizu,* 534 U.S. at 274-75 (quoting *Sokolow,* 490 U.S. at 9). Rather, "the totality of the circumstances— the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417-18 (1981). "In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." *Brignoni-Ponce,* 422 U.S. at 885. "A law enforcement officer may assess these factors in light of his experience and specialized training, and a court should accord deference to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Gandara-Salinas,* 327 F.3d 1127, 1130 (10th Cir. 2003) (citations omitted).

The Magistrate Judge failed to consider several of the *Brignoni-Ponce* factors—the characteristics of the area in which the vehicle is encountered; the proximity of the area to the border; the usual patterns of traffic on the particular road; the driver's behavior; and aspects of the vehicle—as indicative of criminal activity in this case. *See* Doc. 49. Indeed, the Supreme Court determined that these factors are appropriate considerations for an agent to weigh because each factor is explicitly listed as a consideration in the *Brignoni-Ponce* analysis.

The *Brignoni-Ponce* factors support the conclusion that Agent Morin's stop of the Defendant's vehicle was based on a reasonable and articulable suspicion that the Defendant was engaging in criminal activity. At the time he encountered the Defendant's vehicle, Agent Morin

had been a Border Patrol agent in the Lordsburg, New Mexico area for approximately nine and a half years.  Doc. 40 at 10.[2]  Agent Morin testified that in his nine and a half years as a Border Patrol agent, he had patrolled Highway 80 at least once or twice a week.  *Id.* at 16.  In fact, Agent Morin used his knowledge of the "modes or patterns of operation" typically used by alien and drug smuggling organizations, in order to deduce that the Defendant was acting in accordance with those patterns.  *Cortez,* 449 U.S. at 418.  More specifically, Agent Morin testified that Highway 80 runs from Douglas, Arizona, to Interstate 10 in New Mexico.  Doc. 40 at 13 and 19; *see also* United States' Exhibit 8 (map of southern New Mexico and Arizona).  Agent Morin also testified that, based on his training and experience, he was aware that Highway 80 was frequently used by smugglers to transport aliens and/or drugs because Highway 80 circumvents Border Patrol checkpoints in Arizona on the road that runs from Douglas to Tucson.  Doc. 40 at 13.  Essentially, Agent Morin testified that there is one checkpoint on Highway 80 on the west side in Arizona and no checkpoints on Highway 80 in New Mexico.  *Id.*  Agent Morin explained that "[a] lot of vehicles that come from … Mesa, most of the vehicle stops that I've performed in the past and apprehended, alien smuggling cases, they drive on New Mexico Highway 80 to I-10 just to avoid the checkpoints that are on the way from Douglas to Tucson just north or south of Tombstone."  *Id.* at 19.  Agent Morin explained that, based on his experience and training, alien and drug smuggling vehicles originating from Mesa, Arizona, will commonly drive from Douglas on New Mexico Highway 80 toward Tucson and back to Phoenix, adding approximately 100 miles to the trip.  *Id.* at 20.

---

[2] Citations to "Doc. 40 at ___" refer to the transcript of the evidentiary hearing held on February 22, 2016.  The transcript is available on the District Court's docket sheet for the Defendant's criminal case, 14-CR-4409 KG.

With this knowledge, Agent Morin was parked at the intersection of New Mexico

Highway 80 and Highway 9, to observe traffic related to alien smuggling or drug trafficking.  *Id.*

at 12-13.  Agent Morin first saw the Defendant's vehicle as the Defendant traveled northbound

on Highway 80.[3]  *Id.* at 14.  At this time, Agent Morin was approximately 50 miles north of the

---

[3] The Magistrate Judge noted that "Agent Morin's testimony at the hearing that he was unable  to
see Defendant's demeanor when she first passed is inconsistent with the Government's
Response, which alleged that Agent Morin could see Defendant and that she appeared rigid and
did not turn to look at him." *Compare* [Doc. 30] at 3, *with* Hrg. Tr. At 17:1-5.  Prior to the
suppression hearing, the United States anticipated that the facts laid out in its Response to
Defendant's Motion to Suppress would be established through testimony at the suppression
hearing.  On direct examination, when asked if he could see the demeanor of the female driver as
she passed his location, Agent Moring stated, "No. It passed, the vehicle passed. I could see the
silhouette. Once the vehicle passed me, I could see the plates. And it was the time of the night, I
didn't recognize the vehicle, that was just – I just needed to check this vehicle, see where it's
coming from."  Doc. 49 at 17.  However, during cross-examination, the following exchange
occurred:

| | |
|---|---|
| Mr. Candelaria: | You told [the U.S. Attorney's Office] (indicating) that this person was a female, didn't you? |
| Agent Morin: | Yes. |
| Mr. Candelaria: | You told them (indicating) that this driver was sitting rigid, right? |
| Agent Morin: | I didn't say she was driving rigid. |
| Mr. Candelaria: | Would they make things up? |
| Agent Morin: | I don't remember that. |
| Mr. Candelaria: | You told them that when this driver drove by you, he didn't or she didn't acknowledge you, right? |
| Agent Morin: | I don't remember she -- I just saw the vehicle and -- I'm sorry. |
| Mr. Candelaria: | They relied on you, Agent -- |
| Agent Morin: | Okay. |

…

*Continued on the next page…*

Mexican border. *Id.* at 12-13.  The Defendant was traveling at approximately 4:10 a.m., which

Agent Morin testified was unusual given that traffic at that time usually consisted of only semi-

trailer trucks. *Id.* at 14.  Additionally, Agent Morin did not recognize the Defendant's vehicle as

belonging to a local resident. *Id.*  Agent Morin further explained that he believed that the vehicle

was not local because the Defendant's vehicle did not fit in the area and he did not recognize it.

Doc. 40 at 15-16.  Agent Morin testified that in his nine and half years of patrolling the area, he

had become familiar with the traffic patterns and the types of vehicles that travel in and around

---

…

Mr. Candelaria:      You told [the U.S. Attorney's Office] that, didn't you?

Agent Morin:      Just that she was she was driving pretty much like this (indicating).

Mr. Candelaria:      "Like this."  So with two hands on the steering wheel, right?

Agent Morin:      That's what I remember.

Mr. Candelaria:      And sitting rigid?

Agent Morin:      Straight posture, yes.

Mr. Candelaria:      And not turning and looking at you as they drove by?

Agent Morin:      Yes.

*See* Doc. 40 at 46-47.  Agent Morin's testimony on cross-examination could be interpreted as simply acknowledging that he had told the U.S. Attorney's Office that the Defendant was driving with two hands on the wheel, sitting with straight posture, and not looking at him as she drove by.  However, Agent Morin's testimony could also be interpreted as clarifying his testimony on direct examination – that he could not see the Defendant's demeanor as she drove by.  Agent Morin clarified that what he remembered was that the Defendant was driving with two hands on the wheel, sitting with straight posture, and not looking at him as she drove by.  Because Agent Morin's testimony —regarding what he observed with respect to the Defendant's demeanor when she initially passed his location— it is somewhat unclear, the United States did not argue in its first objections to the Magistrate Judge's PF&RD that the Defendant appeared rigid and did not turn to look at him, and does not rely on these facts now to assert that the agent had reasonable suspicion for the stop.

the area. *Id.* Agent Morin also stated that he was familiar with the vehicles driven by the residents of Rodeo, New Mexico—a small town of approximately 200 residents located approximately eight miles south of where Agent Morin encountered the Defendant's vehicle— and that he did not recognize the Defendant's vehicle as being a local vehicle. *Id.* at 15-16.

Bolstering these facts is the additional fact that, within the preceding weeks, Agent Morin had apprehended two vehicles attempting to smuggle aliens in the same area where Agent Morin observed the Defendant's vehicle. *Id.* at 13. Moreover, the make of the Defendant's vehicle was consistent with the type of other vehicles that Agent Morin had stopped attempting to smuggle aliens. *Id.* at 15, 81. Another factor that supports reasonable suspicion is the fact that Agent Morin discovered that the Defendant's vehicle was registered to an address located in Mesa, Arizona, and, as described above, based on his training and experience, Agent Morin was aware that many smugglers utilizing Highway 80 to transport narcotics and aliens originated from the Mesa/Phoenix, Arizona area. *Id.* at 18-20. Agent Morin also knew that smugglers originating from Arizona often used New Mexico Highway 80 to circumvent the checkpoints in Arizona to avoid law enforcement detection. *Id.* It is not unreasonable to infer from these facts that the Defendant was traveling from Douglas to Mesa, given the fact that Agent Morin did not recognize the Defendant's vehicle as being local and the fact that the Defendant's vehicle was registered to a Mesa address.

Agent Morin's extensive experience with the area, when coupled with the facts presented, gave rise to reasonable suspicion to stop the Defendant's vehicle. The Defendant's car was traveling on a known smuggling route where Agent Morin and other Border Patrol agents recently had apprehended several vehicles, including vehicles of a similar make and model as the Defendant's vehicle—attempting to transport narcotics and aliens—approximately 50 miles from

the international border.  In addition, the Defendant's vehicle displayed out-of-state plates

originating from Mesa, Arizona, and she was driving at a time—4:00 a.m.—and place—

Highway 80—where, in the agent's experience, the only legitimate traffic is semi-trailer trucks

or locals.  Based on all of these factors, Agent Morin concluded that the Defendant was acting in

accordance with the patterns and modes typically displayed by narcotics and/or alien traffickers.

Furthermore, Agent Morin testified that, prior to stopping the Defendant, Agent Morin

observed her swerve left in her lane several times. [4]  Doc. 40 at 22.  Thus, it was reasonable for

Agent Morin to believe that behavior could be attributed to nervousness because the Defendant

observed a law enforcement officer in a marked unit behind her.  Giving proper consideration to

Agent Morin's observations relating to the *Brignoni-Ponce* factors, the totality of the

circumstances supports a finding of reasonable suspicion of criminal activity justifying the stop.

The evidence obtained deriving from the subsequent search of the trunk should, therefore, not be

suppressed.

---

[4] In his Second PF&RD, the Magistrate Judge did not find credible Agent Morin's testimony that
he could see the Defendant look in her rear view mirror while he was following her.  *See* Doc. 49
at 6-7.  Additionally, the Magistrate Judge noted that "Agent Morin's testimony at the hearing
that he could see Defendant look in her rear view mirror at 'one of the time when the road bends'
is inconsistent with the Government's Response, which alleged that Defendant was 'constantly
checking her rear view mirror.'" *Id.*  at 6 n.3.  Again, prior to the suppression hearing, the United
States anticipated that this fact, which was laid out in the United States' Response to Defendant's
Motion to Suppress, would be established through testimony at the suppression hearing.  Prior to
filing its response, the United States met with Agent Morin who stated that while he was
following the Defendant's vehicle, Agent Morin noticed that the driver displayed signs of
nervousness by constantly checking her rear view mirror.  *See* Doc. 30 at 4.  In fact, Agent Morin
testified consistently with this assertion.  As the Magistrate Judge noted, "Agent Morin testified
that during this period he observed Defendant check her rear view mirror several times, which he
considered to be suspicious behavior."  Doc. 49 at 6-7.  The difference between the Defendant
checking her rear view mirror "constantly" or "several times" is negligible, and should not lead
to a conclusion that Agent Morin testified inconsistently with his prior statement to the U.S.
Attorney's Office.

## IV.    Conclusion

Accordingly, the United States asks this Court to reject the Magistrate Judge's

conclusions of law, and find instead that Agent Morin had reasonable suspicion to stop the

Defendant's vehicle.


Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney


*Filed electronically on 4/21/2016*
SELESIA L. WINSTON
MARISA A. LIZARRAGA
Assistant United States Attorneys
555 S. Telshor, Suite 300
Las Cruces, New Mexico
88011 (575) 522-2304

I HEREBY CERTIFY that I
electronically filed the foregoing using
the CM/ECF system which will send
notification to defense counsel of
record.


*Filed electronically on 4/21/2016*
SELESIA L. WINSTON
Assistant United States Attorney