**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**                                                                                                                    **No. 15-cr-4409 KG**

**SULEMA CARBAJAL DEL REAL,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S SECOND PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on the Magistrate Judge's Second Proposed Findings and Recommended Disposition ("PFRD") [Doc. 49], filed on April 7, 2016, in which the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended that the Court grant Defendant's Motion to Suppress [Doc. 22]. The United States objected to the PFRD on April 21, 2016 [Doc. 50]. Defendant objected on April 22, 2016. [Doc. 51]. Having reviewed the PFRD, the United States' objections, Defendants' objections, and the entire record, I overrule all objections and adopt the PFRD.

### Standard of Review

Once a party has filed objections to a Magistrate Judge's PFRD, the Court must consider those objections *de novo.* Fed. R. Crim. P. 59(b)(3). "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." *Id.* The United States objects to the overall legal conclusion of the PFRD.

**Discussion**

In the PFRD, the Magistrate Judge recommended granting Defendant's Motion to Suppress because he found that considering the totality of the circumstances, U.S. Border Patrol Agent Orlando Morin did not have reasonable suspicion to stop Defendant for an immigration inspection, and that the stop violated the Fourth Amendment. [Doc. 49] at 10. The United States objects to this conclusion of law and asks the Court to find that Agent Morin did have reasonable suspicion to stop Defendant. [Doc. 50] at 11.

Unlike ordinary police officers, Border Patrol agents have limited jurisdiction. *Ortiz v. United States Border Patrol*, 39 F. Supp. 2d 1321, 1326 (D.N.M. 1999), *aff'd*, 210 F.3d 390 (10th Cir. 2000) ("Border Patrol agents are not general law enforcement officers. Instead . . . their authority and duties are circumscribed by statute and limited in scope. Their primary duties are to prevent illegal aliens from entering the country.").

In determining whether a Border Patrol agent had reasonable suspicion to stop a vehicle in the border area, the court considers "the totality of the circumstances" under which the stop occurred. *United States v. Sokolow,* 490 U.S. 1, 8 (1989). The totality of the circumstances should "be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Leyba,* 627 F.2d 1059, 1063 (10th Cir. 1980). Courts must also "accord deference to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams,* 271 F.3d 1262, 1268 (10th Cir. 2001).

When making reasonable suspicion determinations with regard to stops in border regions, courts take into account the *Brignoni-Ponce* factors. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975). These factors include (1) the characteristics of the area where the agent

encountered the vehicle; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the road; (4) the agent's previous experience with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including erratic driving or any obvious attempts to evade the agent; (7) aspects of the vehicle, such as a station wagon with concealed compartments; (8) the appearance that the vehicle is heavily loaded; and other relevant factors. *Id*.

"When evaluating an [agent's] decision to stop a vehicle, a court may not engage in a 'sort of divide-and- conquer analysis' by evaluating and rejecting each *[Brignoni-Ponce]* factor in isolation." *United States v. Cheromiah,* 455 F.3d 1216, 1221 (10th Cir. 2006). The basis for this legal tenet rests on the reasoning that while the *Brignoni-Ponce* factors, "by themselves, may be 'consistent with innocent travel,' [they] may collectively amount to reasonable suspicion." *Id.* (citation omitted). In other words, law enforcement officers "need not rule out the possibility of innocent conduct" before conducting an investigatory detention. *United States v. Arvizu,* 534 U.S. 266, 277 (2002). Courts must, therefore, take into account the "whole picture." *Cheromiah,* 455 F.3d at 1221.

The United States "objects to the Magistrate Judge's ultimate conclusion that Agent Morin lacked reasonable suspicion to stop the Defendant's vehicle." [Doc. 50] at 4. Thus, I consider now whether the facts found[1] by the Magistrate Judge show that a reasonable Border Patrol agent with Agent Morin's training and experience would have found that the circumstances here amounted to reasonable suspicion.

---

[1] The United States expressly states that it is not relying on any assertion that Defendant appeared rigid as she drove past, [Doc. 50] at 7–8 n.3, nor is it relying on Agent Morin's testimony about a purported shift change, *id*. at 3 n.1, to support its argument that the stop was supported by reasonable suspicion.

Orlando Morin had been a Border Patrol agent for nine years in August 2015. The Magistrate Judge gave due deference to his training and experience as a Border Patrol agent. Prior to beginning his career, Agent Morin attended the 20-week Border Patrol training academy. Hrg. Tr. at 10:12–21. As an agent, his duties involved detecting and apprehending illegal aliens and narcotics. *Id*. at 10:22–11:1.

At approximately 4:00 a.m. on August 31, 2015, he was observing a section of New Mexico Highway 80, about 50 miles from the U.S.-Mexico border, and one mile from the Arizona border. [Doc. 30] at 1; Hrg. Tr. at 13:2–8. Agent Morin patrolled this area about once or twice a week and was familiar with the vehicles belonging to local residents. *Id*. at 16:11–16. He was aware that smugglers often used Highway 80, and that traffic at that early hour consisted mainly of semi-trailer trucks. *Id*. at 13:10–15, 14:9–13. In his experience, smugglers from Mesa and Phoenix, Arizona frequent this portion of Highway 80 in order to avoid Border Patrol checkpoints on other routes. *Id*. at 19:1–10. Agent Morin was trained to observe vehicle occupants and had observed hundreds or thousands during his career. *Id*. at 79:12–18. The Magistrate Judge accorded due deference to the agent's ability to distinguish between innocent and suspicious conduct.

Agent Morin saw Defendant pass his location in a 2002 Honda Civic, travelling at the speed limit. *Id*. at 14:16; 16:22–25; 45:8–18. Because of the vehicle's speed, and because he was only able to see the area of the highway illuminated by his headlights as it was completely dark outside, Agent Morin was only able to observe the vehicle for a fraction of a second. *Id*. at 44:17–46:2. He had apprehended one or two older-model sedans carrying illegal aliens in the previous weeks. *Id*. at 69:7–9. He did not recognize the car as belonging to a local resident, and

decided to follow the car while calling in a records check. *Id*. at 17:1–11.  The records check revealed that the car was registered to a woman in Mesa, Arizona, was not stolen, and had not recently crossed the U.S.-Mexico border. *Id*. at 18:2–10.  The agent followed her for about fourteen miles, during which time she continued to travel at the speed limit. *Id*. at 66:21–67:1; 64:25–65:3.  Agent Morin testified that during this period he observed Defendant check her rear view mirror several times, which he considered to be suspicious behavior. *Id*. at 22:8–11; 65:24–66:7.  The Magistrate Judge rejected this portion of the agent's testimony as he found it to be not credible.[2]

Eventually, Defendant swerved to the left a few times but did not leave her lane. *Id*. at 22:7–11; 69:17–20.  Agent Morin decided to pull Defendant over for an "immigration inspection." [Doc. 30] at 3–4.  After initiating the stop, Agent Morin spoke to Defendant and eventually received her permission to search the trunk of her car, and then later to search her entire vehicle. *Id*. at 5–6; Hrg. Tr. at 25:18–26:1; 29:2–13.  He found two bundles wrapped in brown packing tape. [Doc. 30] at 6. Testing revealed that the bundles contained approximately 80 kilograms of marijuana. *Id*. at 7.  Defendant was arrested and later spoke to agents about the details of her transportation of the drugs. *Id.*

---

[2] The United States discusses (in a footnote to its objections) the Magistrate Judge's finding that Agent Morin was not credible on the issue of whether he could see Defendant look in her rearview mirror while he followed her. [Doc. 50] at 10 n.4.  The United States suggests the difference between Agent Morin's alleged statement in the United States' response to the motion to suppress, that Defendant checked her rearview mirror "constantly," and Agent Morin's testimony at the suppression hearing that she checked the rearview mirror "'several times' is negligible, and should not lead to a conclusion that [he] testified inconsistently…." *Id.*  I construe this argument as an objection to the Magistrate Judge's credibility finding, and I overrule the objection.  Indeed, the Magistrate Judge considered the broader scope of Agent Morin's testimony, noting other evidence including that the area is "pitch black at night" and that "[t]here are no street lights or other sources of illumination that would have allowed the agent to observe Defendant's behavior while following behind her." [Doc. 49] at 7.

Considering *de novo* the totality of the circumstances, I find that a reasonable Border Patrol agent with Agent Morin's training and experience would not have found that the circumstances here amounted to reasonable suspicion of an immigration violation. Because Agent Morin did not have reasonable suspicion, the stop violated the Fourth Amendment. All evidence recovered as a result of the stop is, therefore, suppressed.

## Conclusion

The Court overrules the United States' objections [Doc. 50]. Defendant's objections [Doc. 51] are now moot. The Court further adopts the PFRD [Doc. 49] and grants Defendant's Motion to Suppress [Doc. 22].

**IT IS SO ORDERED.**

_____
**KENNETH J. GONZALES**
**United States District Judge**